IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADVANCED COMFORT TECHNOLOGIES, INC., d/b/a INTELLIBED, a Utah corporation,<br><br>      *Plaintiff*,<br>v.<br><br>LONDON LUXURY, LLC, a New York limited liability company,<br><br>      *Defendant*. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS**<br><br>Case No. 2:17-cv-00497<br><br>District Judge Jill N. Parrish |

## I. INTRODUCTION

This is a contract case. Plaintiff Advanced Comfort Technologies, Inc. d/b/a intelliBED ("Intellibed") entered into a Non-Circumvention Agreement (the "Agreement") with Defendant London Luxury. Under the Agreement, London Luxury agreed to act as a middleman, using its "best efforts" to market Intellibed mattresses to a third-party retailer. In exchange, Intellibed agreed not to "circumvent" London Luxury and Intellibed agreed to pay London Luxury a finder's fee. The deal soured. Intellibed sued London Luxury, claiming, among other things, that London Luxury did not use best efforts to market the mattresses to the third-party retailer. London Luxury brings counterclaims against Intellibed for, among other things, breach of contract and unfair competition, claiming that Intellibed circumvented London Luxury by contacting the third-party retailer without London Luxury's approval. Intellibed has moved to dismiss London Luxury's counterclaim for unfair competition. Intellibed contends that London Luxury's counterclaim for unfair competition is duplicative of its counterclaim for breach of contract. The court agrees.

## II.     FACTUAL ALLEGATIONS[1]

In January 2017, Intellibed sought out London Luxury to assist in marketing and selling the Gel Matrix mattress to Mattress Firm, a thiry-party retailer. Countercl. ¶ 7. Intellibed wanted to take advantage of London Luxury's contacts and relationship with Mattress Firm. Countercl. ¶ 7.

### A. THE NON-CIRCUMVENTION AGREEMENT

On February 21, 2017, Intellibed and London Luxury executed a Non-Circumvention Agreement (the "Agreement"). Countercl. ¶ 8. The Agreement had an effective date of February 17, 2017. Countercl. ¶ 8. In the Agreement, London Luxury agreed to "use its best efforts to market" the Gel Matrix mattress to Mattress Firm. Countercl. ¶ 9. The Agreement requires London Luxury to "not market any other 'gel matrix' mattress products to" Mattress Firm during the "non-circumvent term" and the "finder's fee term." Countercl. ¶ 9. The Agreement defines "gel matrix mattresses" to mean "mattresses featuring a gel matrix structure licensed by Edizone." Countercl. ¶ 9. The Agreement does not prohibit London Luxury from marketing other products to Mattress Firm, including other mattresses that are not gel matrix mattresses. Countercl. ¶ 9.

The Agreement provides that Intellibed would pay London Luxury a finder's fee only if Intellibed sells products to or enters into a business relationship with Mattress Firm. Countercl. ¶ 10. Specifically, if Intellibed sells products to or enters into a business relationship with Mattress Firm, Intellibed is required to pay a finder's fee "in perpetuity in the amount of six (6%) percent of the net revenue (sales to [Mattress Firm] less returns and damages) received by

---

[1] The following facts are drawn from London Luxury's Counterclaim. Countercl., ECF No. 30 at 12. And at this stage, all well-pled factual allegations are taken as true and viewed in the light most favorable to London Luxury. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[Intellibed] from [Mattress Firm] irrespective of when [Intellibed] is actually paid by [Mattress Firm]." Countercl. ¶ 10.

The Agreement contains provisions that restrict Intellibed's ability to "circumvent" London Luxury. Specifically, Intellibed agreed "not to directly or indirectly contact or initiate contact with [Mattress Firm] or any officers, directors, shareholders, consultants, attorneys, employees, agents or other affiliates of [Mattress Firm] at any time for any purpose, unless such approval is specifically granted in writing by [London Luxury]." Countercl. ¶ 11. "In the event that [Intellibed] is contacted by [Mattress Firm]," Intellibed agreed that it would "notify [London Luxury] within 24 hours (in person, by phone, voice mail, message, email, or certified mail) of the contact and a detailed account of the nature of the content communicated during said contact." Countercl. ¶ 11. Intellibed also agreed "not to undertake any transaction . . . of any kind with [Mattress Firm]." Countercl. ¶ 11. These obligations "extend to employees and officers of [the parties'] respective companies/businesses." Countercl. ¶ 11.

The Agreement contains a liquidated damages clause. It provides that, in addition to remedies available in law or equity:

> (a) [London Luxury] shall be entitled to temporary and/or permanent injunctive relief and specific performance without the necessity of proving actual damages;
>
> (b) if there is a breach of any of the covenants by [Intellibed], [London Luxury] shall recover from [Intellibed] the general damages, the consequential damages, a 10% payment on the sales of products by [Intellibed] to [Mattress Firm], and all court costs and reasonable attorneys' fees incurred by [London Luxury] at both the trial and appellate level;
>
> (c) [London Luxury] shall be entitled to a lien against assets of [Intellibed] in the event that [Intellibed] is not able to pay any such damages."

Countercl. ¶ 12.

The Agreement contains an integration clause. It provides that the Agreement "constitutes the entire agreement between the parties hereto regarding the transactions contemplated hereby." Countercl. ¶ 13. And the Agreement contains a no-oral-modification clause. It provides that the Agreement "may only be amended, supplemented, or otherwise altered with the express written consent of all parties hereto." Countercl. ¶ 13.

### B. LONDON LUXURY'S MARKETING STRATEGY

After the parties executed the Agreement, London Luxury immediately developed and implemented a strategy to market Intellibed's Gel Matrix mattress to Mattress Firm. Countercl. ¶ 14. London Luxury spent time, money, resources, and staffing to market the Gel Matrix mattress to Intellibed. Countercl. ¶ 15. In the eight weeks after the parties executed the Agreement, London Luxury secured two meetings with Mattress Firm. Countercl. ¶ 14.

London Luxury first arranged a meeting between Intellibed and Mattress Firm that took place on March 13, 2017, less than three weeks after the parties executed the Agreement. Countercl. ¶ 16. Intellibed and Mattress Firm met at Mattress Firm's headquarters in Houston, Texas. Countercl. ¶ 16. London Luxury, at the first meeting, convinced Mattress Firm to meet with Intellibed for a second time on April 3, 2017. Countercl. ¶ 17. Mattress Firm President and CEO Ken Murphy was supposed to attend the second meeting. Countercl. ¶ 17.

### C. INTELLIBED CIRCUMVENTS LONDON LUXURY

Intellibed circumvented London Luxury by directly speaking to at least one Mattress Firm representative, on multiple occasions, concerning the Gel Matrix mattress. Countercl. ¶ 18. Specifically, Intellibed spoke with an unnamed Mattress Firm representative on at least two occasions. Countercl. ¶ 19. During the discussions, the unnamed Mattress Firm representative told Intellibed that London Luxury "was having a negative impact on Intellibed's ability to negotiate with Mattress Firm." Countercl. ¶ 22. London Luxury alleges, on information and

4

belief, that Intellibed and the unnamed Mattress Firm representative discussed whether Intellibed could market the Gel Matrix mattress directly to Mattress Firm, removing London Luxury from the picture. Countercl. ¶ 24.

London Luxury did not give Intellibed written approval to have these discussions with Mattress Firm. Countercl. ¶ 20. London Luxury did not give verbal approval to Intellibed to engage in such discussions with Mattress Firm. Countercl. ¶ 20. And Intellibed did not notify London Luxury that it spoke with a Mattress Firm representative within twenty-four of the discussions. Countercl. ¶ 21.

London Luxury also alleges, on information and belief, that at least one of the unnamed Mattress Firm representatives that Intellibed spoke with was Mattress Firm's Vice President, Joe Pavliglianti. Countercl. ¶ 25. London Luxury believes that Intellibed hired Mr. Pavliglianti to be its Executive Vice President of Sales. Countercl. ¶ 25. Before Intellibed hired him, Mr. Pavliglianti interviewed for a senior position at London Luxury. Countercl. ¶ 26. But Mr. Pavliglianti withdrew his name from consideration on March 31, 2017, shortly after the Intellibed first met with Mattress Firm. Countercl. ¶ 26.

D. **INTELLIBED STOPS COOPERATING**

Around the time that Mr. Pavliglianti withdrew himself from consideration for a position at London Luxury, Intellibed stopped cooperating with Mattress Firm. Countercl. ¶ 28. Specifically, on March 27, 2017, three days before Mr. Pavliglianti withdrew his name as a candidate to work at London Luxury, Intellibed CEO Colin House informed London Luxury that he would neither attend nor support the second meeting scheduled between Intellibed and Mattress Firm. Countercl. ¶ 29. Ultimately, Intellibed refused to supply London Luxury with Gel Matrix mattresses for the second meeting, and London Luxury incurred costs by ordering and preparing replacement supplies for the second meeting. Countercl. ¶ 31.

On April 3, 2017, London Luxury met with the President and CEO of Mattress Firm and other high-ranking Mattress Firm executives in Houston to discuss a potential business opportunity with Intellibed, even though Intellibed neither attended the meeting nor supplied products for the meeting. Countercl. ¶ 32. At the meeting, Mattress Firm voiced concerns with Intellibed's products and stated that Intellibed needed to improve its designs. Coutnercl. ¶ 33.

Days after the second meeting, Intellibed told London Luxury that it wanted to end its contractual relationship with London Luxury. Countercl. ¶ 34. Since this time, Intellibed has neither cooperated nor provided London Luxury with any support in marketing the Gel Matrix mattress. Countercl. ¶ 35.

### E. LONDON LUXURY'S COUNTERCLAIMS

London Luxury alleges four counterclaims against Intellibed. *First*, London Luxury seeks a declaratory judgment that the Agreement is valid and enforceable and that Intellibed breached it. Countercl. ¶¶ 39–46. *Second*, London Luxury asserts a claim for breach of contract on the grounds that Intellibed breached the Agreement by, among other things, communicating with Mattress Firm on multiple occasions without London Luxury's approval. Countercl. ¶¶ 47–55. *Third*, London Luxury asserts a claim for breach of the duty of good faith and fair dealing on the grounds that Intellibed acted in bad faith when it refused to cooperate with London Luxury. Countercl. ¶¶ 56–62. *Fourth*, London Luxury asserts a claim for unfair competition on the grounds that Intellibed misappropriated London Luxury's marketing efforts when it circumvented London Luxury, in violation of the Agreement. Countercl. ¶¶ 63–68.

### III. DISCUSSION

### A. MOTION STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim upon which relief cannot be granted. The court's function on a Rule 12(b)(6) motion is not to

weigh potential evidence that the parties may present at trial but to assess whether a party's allegations are legally sufficient to state a claim upon which relief can be granted. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

## B. THE UNFAIR COMPETITION COUNTERCLAIM

Under New York law, the essence of a claim for unfair competition is the bad faith misappropriation of the labors and expenditures of another. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995). Unfair competition is construed broadly: "[t]he incalculable variety of illegal practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use." *Electrolux Corp. v. Val-Worth, Inc.*, 161 N.E.2d 197, 204 (N.Y. 1959).

Here, London Luxury has sufficiently alleged that its efforts were misappropriated in bad faith by Intellibed. London Luxury invested labor, skill, and money in marketing the Gel Matrix mattress to Mattress Firm. Intellibed misappropriated London Luxury's efforts in bad faith by attempting to market the Gel Matrix mattress directly to Mattress Firm without London Luxury's approval. Intellibed did this in an attempt to gain a commercial advantage over London Luxury and to avoid paying a finder's fee, which it would be required to pay under the Agreement. Consequently, the court concludes that London Luxury has alleged sufficient facts to state a claim for unfair competition when that claim is viewed in isolation.

Despite this, Intellibed contends that the claim for unfair competition should be dismissed because it is duplicative of the claim for breach of contract. London Luxury argues that the claim for unfair competition should not be dismissed because unfair competition is an intentional tort under New York law that may be pled in the alternative to a claim for breach of contract. The court agrees with Intellibed: the unfair competition claim is duplicative and must be dismissed.

"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 516 N.E.2d 190, 193 (N.Y. 1987). As such, "where the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract; otherwise [the] plaintiff is limited to an action in contract." *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003).

Applying this principle, New York courts often dismiss claims for unfair competition that are premised on the same factual allegations underlying a claim for breach of contract. *See e.g.*, *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 414 (E.D.N.Y. 2012) (dismissing claim for unfair competition because it was "premised on the same factual allegations underlying a claim for breach of the duty of good faith and fair dealing"). "It is well-established . . . that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract." *Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (citation omitted).[2]

Here, London Luxury's claim for unfair competition is premised on the same factual allegations as its breach of contract claim. The claim for unfair competition is based on

---

[2] *See also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, No. 1:17-CV-1642, 2017 WL 4535933, at *6–7 (E.D.N.Y. Oct. 7, 2017) (dismissing claim for unfair competition as duplicative of claim for breach of contract because the parties' agreement governed the conduct underlying both claims); *Washington v. Kellwood Co.*, No. 05-CV-10034, 2009 WL 855652, at *7 (S.D.N.Y. Mar. 24, 2009) ("Plaintiffs' basis for a claim of common law unfair competition is that Defendant misappropriated confidential information for the purpose of marketing and selling its own products. However, like their claim for breach of the duty of good faith and fair dealing, Plaintiffs' unfair competition claim is merely duplicative of their breach of contract claims." (citation omitted)).

allegations that Intellibed "circumvent[ed] London Luxury and deal[t] directly with Mattress Firm *in violation of the . . . Agreement*." Countercl. ¶ 67 (emphasis added). Similarly, the claim for breach of contract is based, in part, on allegations that Intellibed violated the Agreement by "having communications with a Mattress Firm representative . . . regarding . . . whether [Intellibed] should circumvent London Luxury." Countercl. ¶ 50. Both claims are based on the same facts—Intellibed's unauthorized contact with Mattress Firm—and the same duties—those imposed on Intellibed by virtue of the Agreement. Moreover, London Luxury seeks the same damages under both claims. *See* Countercl. at 25–26. Because London Luxury's claim for unfair competition is entirely duplicative of its claim for breach of contract, it must be dismissed.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, Intellibed's Motion to Dismiss (ECF No. 31) is GRANTED. London Luxury's claim for unfair competition is DISMISSED WITH PREJUDICE.

Signed April 13, 2018

                                              BY THE COURT

                                              _____
                                              Jill N. Parrish
                                              United States District Court Judge